UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELL, INC.,

            Plaintiff,

                                              Case Number 06-11224

v.                                        Honorable David M. Lawson

ADVICON COMPUTER SERVICES, INC, and
DANIEL ELLES,

            Defendants.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING MOTION TO STAY, TEMPORARILY STAYING EXECUTION OF JUDGMENT, DENYING MOTION FOR SANCTIONS, AND CONDITIONALLY DENYING MOTION TO SEIZE AND DESTROY PROPERTY

       Over two years ago, Dell, Inc. (Dell) sued Daniel David Elles and a computer company he owned, Advicon Computer Services, Inc. (Advicon), for trademark infringement. During that time, the dispute over the merits has taken a back seat to the arguments focusing on Mr. Elles's disobedience of the Court's orders and directives. Mr. Elles's conduct has resulted in a default judgment, which the plaintiff now seeks to enforce by seizing various assets. In turn, Elles seeks to forestall these efforts and therefore asks the Court to stay the judgment while he pursues an appeal. Elles also urges the Court to impose sanctions against counsel for the plaintiff, Brian Wassom, on the grounds that it is frivolous to seek enforcement of the judgment during the pendency of an appeal, and on the contention that Wassom has tampered with evidence. Despite its firm conviction that it is Mr. Elles who has engaged in misconduct, the Court concludes that Elles has a right to a stay, provided that he posts an adequate bond. However, counsel for the plaintiff has done nothing wrong in seeking to enforce the judgment, and the evidence shows that Dell is entitled to most of the relief it seeks. Therefore, the Court will conditionally grant Elles's motion for a stay,

deny his motion for sanctions, and conditionally deny the plaintiff's request to seize and destroy certain assets.

## I.

The Court has described much of the history of this case in an opinion issued on July 12, 2007. *Dell, Inc. v. Advicon Computer Services, Inc.*, 2007 WL 2021842 (E.D. Mich. July 12, 2007). However, a short recap of the events through that date is helpful.

The plaintiff commenced this action on March 22, 2006, and the matter was assigned to the Honorable Julian Abele Cook. The plaintiff alleged that Advicon, through principal Elles, had unlawfully displayed Dell trademarks and logos and improperly advertised itself as an authorized provider of Dell services and products. When the defendants failed to respond to the complaint, the Clerk's Office entered defaults against them. However, Elles subsequently obtained permission to file an answer, and Judge Cook lifted the default as to Elles. Nevertheless, on September 14, 2006, Judge Cook granted the plaintiff's motion for default judgment as to Advicon. Judge Cook determined that Advicon was liable to the plaintiff for $133,330.56 and further enjoined Advicon from

> a. using or displaying the Dell or Dell Logo Marks and any other colorable imitation or simulation of any mark in Dell's family of Dell marks;
>
> b. doing any other act or thing likely to induce the belief that Defendants' services are in any way legitimately connected with or sponsored by Dell; and
>
> c. doing any act or thing that dilutes the distinctiveness of any mark in Dell's family of Dell marks or that tarnishes the goodwill associated with any of them.

Order Granting Def. J. against Advicon [dkt # 15] at 2-3. Advicon, acting through Elles, ignored this directive entirely.

On September 19, 2006, the case was reassigned to the undersigned pursuant to an administrative order for general docket adjustment. Over the next year and beyond, the plaintiff would allege, and the Court would find, that Elles would cause the judgment defendant to avoid its obligations through acts of artifice and deception.

For instance, in an attempt to skirt the terms of Judge Cook's permanent injunction, Elles caused Advicon's shop to be moved three-tenths of a mile down the road to 34740 Gratiot (in Macomb County, Michigan), made a subtle change to its name, and ostensibly resigned from his formal position as president and CEO, at least in name. The Court had held Advicon in civil contempt in October 2006 for failing to abide by the injunction, but had indicated that the contempt could be purged by the defendants removing the offending signage and compensating the plaintiff for its costs and fees. Elles apparently removed the signs for a short period of time, but he then re-posted them upon opening the "new" store just down the street. The plaintiff challenged this chicanery by filing a motion in March 2007 to hold the defendants in contempt once again. (In the meantime, Elles had failed to appear for a properly noticed deposition, was sanctioned by Magistrate Judge Virginia Morgan for this failure, and was warned that a default judgment against him personally could result if his insubordination continued.) The Court referred the contempt motion to Magistrate Judge Morgan, who determined in May 2007 that Elles had violated the terms of the injunction. *See* Order on Third Mot. to Show Cause [dkt # 49] at 2 ("Mr. Elles intentionally and purposely violated the injunctions individually by installing or causing to be installed signage bearing the Dell mark at the new Advicon location."). The magistrate judge imposed another monetary sanction and recommended that the Court hold the defendants in further contempt, which recommendation the Court adopted on May 31, 2007. However, the Court gave Mr. Elles another

opportunity to redeem himself: the Court stated that the defendants could purge the contempt by, *inter alia*, recalling from those within their control all Dell-related materials of an infringing nature and remitting such items to Dell for destruction.  This directive was ignored.

These events (and many others which have been chronicled by the Court elsewhere in the record), led the plaintiff to file a motion for default judgment against defendant Elles, which the Court granted on July 12, 2007.  To avoid default judgment, Elles argued that his failure to abide by various orders was due to the fact that he had changed his address and therefore had not received notice of these orders.  The Court found this excuse wholly incredible, as Elles had failed to notify the Clerk's Office of such a change, and his conduct at other times showed that he was well aware of the litigation's course.  Similarly, the Court found that the supposed change of address could not excuse Elles's disregard of the permanent injunction against Advicon and its controlling parties entered nearly one year earlier.  As the Court noted, "[p]hotographs taken by the plaintiff on June 19, 2007 reveal that as of that date, the Advicon store continued to bear two large signs depicting the Dell logo and advertising the store as an authorized provider of Dell sales and service."  *Dell, Inc. v. Advicon Computer Services, Inc.*, 2007 WL 2021842, *9 (E.D. Mich. July 12, 2007).  From these circumstances, the Court determined that a default judgment against Elles was an appropriate sanction pursuant to the factors described in *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 154-55 (6th Cir. 1988), and progeny.  *Dell, Inc. v. Advicon Computer Services, Inc.*, 2007 WL 2021842, *9 (E.D. Mich. July 12, 2007).  Therefore, the Court entered judgment against Mr. Elles, pronouncing that he and Advicon were jointly and severally liable for the sum of $152,082.32, "which include[d] the sum contained in the default judgment previously entered against Advicon on September 14, 2006, as well as the costs and fees awarded by the magistrate judge's order dated

May 8, 2007." Default J. [dkt # 67] at 1. The default judgment also incorporated the basic terms of the injunction vis-à-vis Advicon:

> It is further **ORDERED AND ADJUDGED** that defendant Elles shall:
>
> (1) Immediately remove and destroy all signage with the Dell mark or logo or which reflects Dell's approval or certification of Mr. Elles or Advicon, including any online advertisements;
>
> (2) Immediately recall from the defendants' business partners, customers, and all others within their control, all Dell-related products, literature, labels, advertising and other materials of a counterfeiting, infringing, misleading, diluting, tarnishing or unfair nature;
>
> (3) Immediately turn over to Dell for destruction all Dell-related packaging, literature, signage, advertising, lables, and other materials of a counterfeit, infringing, misleading, diluting, tarnishing, or unfair nature; and
>
> (4) File with the Court and serve on counsel for Dell a report in writing under oath setting forth in detail the manner and form in which each defendant has complied with the terms of this order on or before **July 16, 2007**.

*Id.* at 1-2.

Predictably, however, the default judgment did not end this matter. For one thing, the plaintiff desired to conduct a creditor's examination of Mr. Elles to determine the scope of his collectible assets. The Court ordered this to occur in its July 12 opinion, but Elles was resistant. Although the creditor's examination was commenced as ordered on July 20, 2007, little was accomplished that day. *See* Elles's Mot. for Sanctions [dkt # 73], Ex. K, Transcript of July 20, 2007 Exam. The transcript of the proceedings shows that Elles refused to answer a number of questions, many of which were plainly relevant to ascertaining his financial condition. *See, e.g., id.* at 15 (refusing to say whether he had appeared in court before). The transcript also reveals that Elles knowingly failed (i.e., refused) to bring the documents listed in the subpoena *duces tecum*. *Id.* at

10. As a result of these difficulties, the parties sought intervention by Judge George Caram Steeh, who was presiding that day.

Judge Steeh determined that the creditor's examination should be continued to another date, and this Court subsequently entered an order confirming that the exam would continue on July 25, 2007. Order Denying Mot for Cont. [dkt # 72]. Unwisely, counsel for the plaintiff complicated things by attempting to move the time designated for the continued examination. Therefore, through miscommunication and a certain degree of fault on both the part of Elles and counsel for the plaintiff, the creditor's examination did not take place on July 25.

Near that same time, Elles filed a series of motions seeking, respectively, vacatur of the default judgments, a finding of contempt against the plaintiff, and sanctions against the plaintiff's counsel. In addition, Elles sought a continuance of the creditor's examination, in which the plaintiff ultimately concurred, with the proviso that a magistrate judge should be appointed to preside over it. On August 30, 2007, the Court denied Elles's motions for vacatur, contempt, and sanctions, granted the plaintiff's request for oversight by a magistrate judge (should it be needed), and directed the plaintiff to bring the subpoenaed documents. *See* Order Continuing Creditor's Exam [dkt # 85].

Once again, the parties were unable to work out the scheduling details for themselves, prompting the plaintiff to seek intervention by Magistrate Judge Morgan. Judge Morgan ordered the creditor's examination to be continued in her courtroom on October 3, 2007, *see* MJ Order Granting Mot. to Adjourn [dkt # 87], but Elles failed to appear. Judge Morgan responded by issuing an order to show cause why the defendant should not be held in contempt and a bench warrant issued for his arrest. MJ Order to Show Cause [dkt # 89]. The magistrate judge explained that if Elles did not appear with all the necessary documents on October 9, 2007, she would have him

arrested immediately. *Id.* at 1-2. Elles showed up on October 9 and asked the undersigned for another continuance. The Court denied this request and directed Elles to report to the magistrate judge. Later that day, Judge Morgan ordered that the defendant could remain free subject to certain conditions. *See* Order Setting Conditions of Release [dkt # 93]. On October 10, 2007, the plaintiff filed a notice stating that the creditor's examination had been completed, and Elles had satisfied his obligations in connection therewith. Notice of Completion [dkt # 92].

Of course, the plaintiff, albeit armed with more information, has yet to collect on its default judgments, which gives rise to the present motions. The plaintiff contends that it is entitled to the assets it seeks because they are in fact owned by Mr. Elles or substantially within his control. Although Elles did not formally respond to the plaintiff's motion for a writ of execution, Elles's deposition testimony and statements in court suggest that he disagrees with this assertion on the grounds that the assets are held by other entities or persons. In addition, Mr. Elles has filed another motion for sanctions against the plaintiff's counsel, contending that the Court lacks jurisdiction by virtue of Elles's appeal and therefore counsel is attempting to enforce the judgment in violation of the law. Similarly, Elles moves for a stay of the judgment because he believes his appeal entitles him to this relief. The Court heard oral argument on these motions in open court on January 15, 2008 and took the matters under advisement.

In the meantime, on February 22, 2008, the Sixth Circuit issued an order denying a petition for a writ of mandamus that Elles had filed during these events. Order Denying Mandamus [dkt # 141]. Elles had asked the Sixth Circuit to enjoin further proceedings in this Court pending resolution of his appeal. Among other things, the court noted mandamus was inappropriate because

Elles "did not post an appellate bond, a step which, if approved, would have stayed any efforts by the plaintiff to collect on the judgment." *Id.* at 2.

Three weeks later, the plaintiff filed a supplemental brief informing this Court of what it deemed further disobedience on Elles's part. The plaintiff submitted photographs suggesting that Elles was still displaying Dell signs despite his statements at the January 15, 2008 hearing that he was unaware of any such signs and that, if there were any, he would remove them immediately. Elles filed a brief in response, denying the allegations and accusing plaintiff's counsel of tampering with the evidence to bolster the plaintiff's case.

## II.

As a threshold matter, the Court must assess its jurisdiction to enforce the default judgment. Elles contends that the Court lacks jurisdiction to do that because he filed an appeal, and thus he posits that counsel for the plaintiff has engaged in sanctionable behavior by pursuing enforcement.

Generally speaking, "'the district court loses jurisdiction over an action once a party files a notice of appeal, and jurisdiction transfers to the appellate court.'" *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007) (quoting *Lewis v. Alexander*, 987 F.2d 392, 394 (6th Cir. 1993)). However, "'[a]lthough a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment.'" *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2006) (quoting *NLRB v. Cincinnati Bronze Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)).

In addition, federal courts have the authority to sanction attorneys for vexatious conduct under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 and pursuant to their inherent authority. However, "[s]uch sanctions . . . are appropriate only where the attorney has acted in bad

faith in the actions that led to the lawsuit or in the conduct of the litigation, or where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001) (per curiam). *See also Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646-47 (6th Cir. 2006). A motion for sanctions is entrusted to the sound discretion of the trial court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Dixon*, 492 F.3d at 671.

In the case at bar, the Court plainly has jurisdiction to entertain the plaintiff's motion to seize and destroy certain assets because that relief amounts to nothing more than the collection of the money judgments and enforcement of the injunctive relief ordered in those judgments. The Sixth Circuit has drawn a "crucial distinction between *expansion* and *enforcement* of judgments." *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 110 (6th Cir. 1990). Since the plaintiff's motion fits into the latter category, the Court may adjudicate the request. It follows that Elles's motion for sanctions on this basis must be denied. Counsel's request finds ample support in both law and fact, rendering sanctions entirely inappropriate. *See Wilder*, 258 F.3d at 130.

### III.

In the alternative, Mr. Elles asks this Court to stay the default judgment issued on July 12, 2007 while he pursues an appeal. Although Elles contended in his brief that he was entitled to a stay because the Court has no jurisdiction to enforce the judgment, this reasoning is plainly flawed. Nevertheless, the Court concludes that Elles has a right to a stay, provided that he posts an adequate bond.

Rule 62(d) of the Federal Rules of Civil Procedure states:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d). The Sixth Circuit has explained that this Rule "entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right." *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). The amount of the bond, however, is entrusted to the discretion of the trial court. *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002). "A judgment creditor's primary concern when a judgment in his favor is stayed pending appeal is that he be 'secure . . . from loss resulting from the stay of execution.'" *Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1154 (2d Cir.1986) (quoting *Federal Prescription Services v. American Pharmaceutical Association,* 636 F.2d 755, 760 (D.C. Cir.1980)), *rev'd on other grounds,* 481 U.S. 1 (1987). Therefore, "when setting supersedeas bonds courts seek to protect judgment creditors as fully as possible without irreparably injuring judgment debtors." *Ibid.* (citations omitted). The amount of the bond should secure the judgment creditor for the amount of the judgment, accumulated interest, and costs of the action. A court has discretion to approve a bond in an amount less than the total necessary to secure those sums, but the court must consider such factors as the complexity of the collection process, the amount of time required to obtain a judgment after it is affirmed on appeal, the availability of funds to pay the judgment, whether the defendant's ability to pay the judgment is so obvious that the cost of the bond would be a waste of money, and the economic burden on the judgment debtor and the impact on its other creditors. *See* 12 James Wm. Moore et al., *Moore's Federal Practice* § 62.03[2] (3d ed. 1997); *Dillon v. Chicago,* 866 F.2d 902, 904-05 (7th Cir. 1988).

In light of Rule 62(d), the Court concludes that Elles is entitled to a stay if and only if he is willing and able to post an adequate bond. The Court adjudged the defendants jointly and severally

liable for $152,082.32 on July 12, 2007. Default J. [dkt # 67] at 1. That award "include[d] the sum contained in the default judgment previously entered against Advicon on September 14, 2006," as well as other costs and fees accumulated as sanctions. *Ibid.* Considering all the factors, the Court finds that a bond in the exact amount of the judgment – $152,082.32 – would be sufficient to protect the plaintiff's interests. Therefore, the Court will conditionally grant Elles's motion for a stay, conditioned on the posting of a supersedeas bond in the amount specified within two weeks time. The judgment will be stayed from the date of this opinion, but the stay will automatically dissolve if Elles fails to post the required bond.

IV.

The Court will address the plaintiff's motion to enforce the judgment, given that Elles may not post a bond. The plaintiff seeks relief in several forms to enforce the judgments that have been entered against Elles and Advicon. In particular, the plaintiff requests an order directing the United States Marshal to (1) seize all personal property located at the Advicon store; (2) destroy all signage and other materials bearing a Dell logo; (3) seize Elles's van bearing a Dell logo; (4) sell the seized assets; and (5) remit the proceeds to the plaintiff in satisfaction of the judgment. The plaintiff also requests an order authorizing it to take ownership and control of the toll-free telephone number utilized by Advicon. The Court concludes that if Elles fails to post a bond, then the plaintiff is entitled to all of the relief it seeks save that pertaining to the telephone number. Accordingly, for the reasons that follow, the Court will conditionally deny the plaintiff's motion, with the understanding that the motion will be granted as mentioned if Elles fails to post a bond within the time prescribed.

A.

Federal Rule of Civil Procedure 69(a) deals with proceedings supplementary to and in aid of judgment. In relevant part, the Rule provides that

> [a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P 69(a). Therefore, "Rule 69 directs district courts to employ the procedures for executing judgments of the state in which the district court sits." *Hudson v. Coleman*, 347 F.3d 138, 147 n.2 (6th Cir. 2003) (Moore, J., dissenting). *See also Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 414 (6th Cir. 1999) (applying Michigan garnishment statute). Of course, the plain language of the Rule limits itself to judgments for the payment of money. Fed. R. Civ. P. 69(a).

Michigan's execution procedures are set forth in Michigan Compiled Laws § 600.6001 *et seq.* Section 600.6017 governs "[e]xecution on personalty," providing as follows: "Except as otherwise provided by law, execution may be made against all personal property of the judgment debtor that is liable to execution at common law." Mich. Comp. Law § 600.6017. When a court orders property to be seized under this statute, Michigan Court Rule 3.106 identifies the individuals who may do the leg work (e.g., court bailiffs and local police officers), and sets forth other procedural safeguards (such as notice). Pursuant to section 600.6017, a judgment creditor may procure seizure of virtually all personal property owned by a judgment debtor, subject, of course, to the rights of superior interest-holders. *See Ypsilanti Fire Marshal v. Kircher*, 273 Mich. App. 496, 539, 730 N.W.2d 481, 509 (2007) ("Execution may be made against all personal property of a judgment debtor that is liable to execution at common law."); *Smith v. Grant*, 53 Mich. 560, 563, 19 N.W. 184, 186 (1884) ("In this case the plaintiff, after obtaining his judgment, might have sold

on execution the interest of the mortgagor in the goods and chattels mortgaged, and for the purposes of a levy might have taken possession temporarily.  But the levy must be subordinate to the right of the mortgagee, and a sale, if made without first paying off the mortgage, must be made of the goods in gross, subject to the mortgagee's lien.") (citations omitted).  Yet, with respect to all items other than United States currency, "execution against personal property . . . requires a judicial sale." *Kircher*, 273 Mich. App. at 539, 730 N.W.2d at 509.

In addition to Rule 69(a), which is primarily concerned with the enforcement of money judgments, Rule 70 of the Federal Rules of Civil Procedure provides a mechanism for the enforcement of judgments calling for the performance of specific acts.  Rule 70 reads in relevant part:

> If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court.  When done, the act has the same effect as if done by the party.

Fed. R. Civ. P. 70(a).  The court in *Board of Commissioners of Stark County v. Cape Stone Works, Inc.*, 206 F. Supp. 2d 100 (D. Mass. 2002), explained the interaction (and distinction) between this Rule and Rule 69(a).  There, the court entered a default judgment in favor of the plaintiffs on their claims for breach of contract, unjust enrichment, and fraud, awarding $327,148.54 in damages, as specified in the complaint.  The complaint also sought specific performance, but the default judgment clearly "did not contain any order to that effect."  *Cape Stone*, 206 F. Supp. 2d at 102.  As a result, the court held that the judgment could only be enforced through Rule 69(a).  ("The judgment contains no equitable relief whatever, and, therefore, must be deemed to be 'a judgment for the payment of money' which is governed by Rule 69(a), rather than a judgment which 'directs

a party . . . to perform [ ] a specific act' which is governed by Rule 70.") (internal citation omitted) (alteration in original). The upshot is that unless the default judgment expressly directs performance of a specific act, relief pursuant to Rule 70 is unavailable. *See also* Wright, Miller, Kane, and Marcus, Federal Practice and Procedure §§ 3012, 3021, 3022 (3d. ed. 1997).

B.

The principal hurdle to the plaintiff's motion arises from Elles's argument that he has no connection with the assets to be seized. As mentioned above, Elles took efforts in December 2006 to move the Advicon store three-tenths of a mile from its original location, following which, according to Elles, he reopened the store under a different name – "just plain 'Advicon'" – and resigned from his position with Advicon Computer Services, Inc. Mot. to Seize [dkt # 127], Ex. A, May 7, 2007 Hrg. Tr. at 15, 18, 26.

On May 3, 2007, Elles incorporated two entities – "Advicon Computer Store, Inc." and "Daniel Elles, Inc." – listing the 34740 Gratiot address as the registered office and "Daniel Elles" as the registered agent. Mot. to Seize, Ex. B, Printouts from Dept. of Labor and Econ. Growth. However, during the creditor's exam, Elles claimed that the "Daniel Elles" listed on the articles of incorporation is actually Daniel *Arthur* Elles, the defendant's father. *See* Mot. to Seize, Ex. C, Elles Dep. at 178-80. He made this claim despite the fact that he admitted he filled out the articles, he signed them with the initials "D.D.E.," his father spends half the year in Florida, and there is no indication on the articles that his father is the proprietor (they simply reference "Daniel Elles"). *Id.* at 179-80, 185. Nevertheless, the defendant stated that he is simply a "consultant" to the new Advicon entity and has no share in its ownership. *See id.* at 185. Further, the defendant claimed that he had no idea how Advicon Computer Services, Inc. closed up shop, he never worked for that entity

but was simply a "consultant" (although he conceded he was the president and CEO), the new store did not use any of the former store's assets, and he has no hand in running the new shop. *See id.* at 122-24, 127-28, 133. His testimony strains credulity:

> Q. How did it come about Advicon left that location?
> A. I don't recall. You have to talk to the owner of Advicon Computer Services, Inc. I don't know. I don't know. You have to find that out.
> Q. You have no idea who owned the company that you were president and CEO of?
> A. Not at that time. I have no idea.
> Q. Dan, do you expect me to believe the things that you're telling me?
> . . .
> A. It's a corporation, Brian. Corporations are normally owned by shareholders.
> . . .
> Q. Do you known anybody who owned shares of Advicon Computer Services, Inc?
> A. At one time I believe I owned, I don't know, a few shares of the company during the incorporation time. I don't recall. I don't know.
> Q. During the incorporation time?
> A. I don't know.
> Q. Did you ever sell those shares?
> A. I never did anything with them.
> Q. You still had them?
> A. Huh?
> Q. You had them throughout the entire length of the company's existence?
> A. No, no. I don't even – you know what, I don't even want to go there.
> Q. I want to go there.
> . . .
> A. I don't think I owned any, but I just want to double check before I answer that. So let's proceed to the next thing.
> Q. You don't know whether or not you owned shares in the company that you were president and CEO of?

*Id.* at 136-38.

In addition to these internal inconsistencies, Elles's assertion that he had little knowledge of or role in the move to the new store is flatly contradicted by his testimony before Magistrate Judge Morgan several months earlier. The transcript of the hearing held on May 7, 2007 contains the following statements:

[Elles]: I did open up Advicon, a sole proprietor, in December . . . and that Advicon trademark and the Advicon phone bill is all under my name, and it's not under Advicon Computer Services, Inc. . . .  Why doesn't [the plaintiff] come after me?
. . .
[Elles]: Please come after Advicon – Advicon, not Advicon Computer Services, Inc. – and myself.  I welcome it.  I welcome you to present your case against me, the proprietor of Advicon. . . .  There's pictures, your Honor, of . . . the new office with everything inside of it, and here's the D/B/A of Advicon as the sole proprietor.
. . .
[The Court]: Did you put the signs back up?
[Elles]: Well, they're different signs, but . . . there are Dell signs, there are Dell logos . . . yes, and I did that under Advicon and Daniel Elles . . . who has no judgment against him.
. . .
[Elles]: I resigned my position [at] Advicon Computer Services, Inc.  Nothing forbids me to open up another company, does it[?]

May 7, 2007 Hrg. Tr. at 15, 18, 20, 26.

Following the creditor's exam, the plaintiff issued a number of writs of garnishment to Mr. Elles's creditors.  Among the garnishees were the entities allegedly controlled by Elles's father, Advicon Computer Store, Inc. and Daniel Elles, Inc.  When these entities failed to furnish disclosures as required by the writs, the plaintiff asked the Clerk of Court to enter defaults against them.  The Clerk entered defaults on November 9, 2007.  On January 2, 2008, the Clerk entered a default judgment against Advicon Computer Store, Inc. and Daniel Elles, Inc.  The judgment against these corporations is for $154,229.30 plus interest and costs.

In light of these facts and the Court's determination that Elles's credibility is wanting, the Court finds that the Advicon store located at 34740 Gratiot is in reality owned and operated by Elles.  Accordingly, Elles cannot defeat the plaintiff's motion by contending that the store (and the property located therein) is not his.  Instead, the Court concludes that Daniel D. Elles is the true owner of these assets and they are subject to the judgments in this case.  Therefore, the plaintiff is well within its rights to request an order "directing the U.S. Marshals to remove and destroy any and all signage

at the Gratiot address bearing the Dell name or logo." Pl.'s Mot. to Seize at 2.  The default judgment entered against Elles directed him to perform a number of affirmative acts, including that he "[i]mmediately remove and destroy all signage with the Dell mark or logo or which reflects Dell's approval or certification of Mr. Elles or Advicon."  Default J. at 1.  Pursuant to Rule 70(a), the Court has the authority to order a third party to perform a specific act where a party adjudged liable has failed to do so.  Fed. R. Civ. P. 70(a).  If Elles fails to post a supersedeas bond, the Court will invoke this authority and order the United States Marshal to seize and destroy all signage located at the Advicon store which bears the Dell mark or logo or which reflect's Dell's approval or certification of Elles or his store.

The Court will also conditionally grant the plaintiff's request for an order directing the Marshal to seize and sell all other personal property contained in the store in an effort to satisfy the monetary portion of the judgment.  This relief also follows from the Court's determination that the store and its assets are in fact owned and controlled by Elles.  This aspect of the request invokes Rule 69, which provides that "[a] money judgment is enforced by a writ of execution" and "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a).  In Michigan, a judgment creditor may seize and sell "all personal property of the judgment debtor that is liable to execution at common law."  Mich. Comp. Law § 600.6017. In this case, the trouble does not arise from the nature of the targeted assets, but rather from the fact that there is an attempt by the judgment debtor to inject some ambiguity into the fact of their ownership.  However, most of this ambiguity arises from Elles's own campaign of deception, and, on balance, all of the targeted assets must be deemed the property of Elles.  Although he has denied his involvement in the opening of the new Advicon store at times, he has admitted it at others.

Furthermore, Elles's claim that he is not the true proprietor of the Advicon store is wholly undermined by his deposition testimony and his testimony before Magistrate Judge Morgan, where he insisted that he did nothing wrong by moving the shop a few blocks down the road under a slightly different name and reposting the Dell signs. His latest attempt to obfuscate the truth – with the claim that the new Advicon store is owned by Advicon Computer Store, Inc., an entity supposedly controlled by Elles's father – must also be rejected because Elles filled out the articles of incorporation, signed them, and there is absolutely no indication that the "Daniel Elles" listed therein is someone other than the defendant. Plainly, Elles is the *de facto* owner and controller of the new Advicon shop and the property it contains. Therefore, because the personal property within the Advicon store in fact belongs to the defendant, it is subject to seizure under Michigan Compiled Law § 600.6017. In accordance with Michigan Court Rule 3.106(B), the Marshal shall, following seizure, sell the assets at a judicial sale. *See also Kircher*, 273 Mich. App. at 539, 730 N.W.2d at 509. Any money that is received from the sale shall be deposited in a trust account for payment to the plaintiff. Mich. Ct. R. 3.106(G)(5).

On the other hand, even if the Court were inclined to accept Elles's position that he is not the proprietor of Advicon Computer Store, Inc. and Daniel Elles, Inc. (which it is not), this would not aid Elles in his attempt to block the seizure of assets. Elles has expressed concern that the subject assets are not his, and others should not suffer because of his own legal plight. Assuming for the moment that Advicon Computer Store, Inc. and Daniel Elles, Inc. are actually owned by the defendant's father, however, the assets of those entities would still be subject to seizure. The Clerk entered default judgments against those companies because they failed to respond to writs of garnishment, rendering their assets independently subject to enforcement proceedings. However

one views the circumstances, the plaintiff has a right to seize the personal property contained in the Advicon store.

In addition to its suspicion that the Advicon store contains seizable assets and unauthorized Dell material, the plaintiff asserts that there is a factual basis for seizing a certain van and the toll-free phone number that is currently being used by the Advicon store. With respect to the van, the plaintiff observes that Elles has "often been seen" driving a white van with large Dell and Advicon logos, both at 34740 Gratiot (the location of the "new" Advicon store) and at his home on 128 New Street. Pl.'s Br. in Supp. at 6. Photographs taken by the plaintiff's agents on June 6, 2007 show Elles standing by this van at his house. However, when Elles was questioned about the van in his October 2007 deposition, he claimed, with no real evidence, that the van actually belonged to his brother-in-law, Gary Smith, and he was only borrowing it. When asked how the Advicon and Dell logos ended up on the van, Elles gave a fairly implausible explanation:

> Q. Why is it that Gary Smith has Advicon and Dell logos on the side of his van?
> A. Why? They're probably paying him to advertise. You'll have to ask him.
> Q. Does Gary Smith have anything to do with Advicon Computer Store?
> A. No.
> Q. No?
> A. I don't think so. I'd have to ask my dad. I don't know. He's not there. He might have got shares of the company by doing the build out. I don't know. I don't get involved with that stuff.
> . . .
> Q. So you're telling me that Gary Smith is paying to have that advertising on the van? Or that somebody is paying Gary Smith to –
> A. Well, that would make sense, then. I would say maybe my dad's worked out a deal with Gary to put that on there.

*Id.* at 214-15.

Determining the true ownership of the van is complicated by the fact that its license plate has been changed. The photos taken on June 6, 2007 show Elles standing by the van bearing Michigan

-19-

licence plate "CB81949." Photos of Advicon Van. However, public records show that on June 12, 2007, the same van was registered to a company named "Tiber" and assigned Michigan license plate "BAN8103." Pl.'s Br. in Supp., Ex. G, Tiber Info. On July 25, 2007, Elles filed a report with the Detroit Police Department, alleging that someone had broken into his van outside of the courthouse and stole various subpoenaed documents, as well as (ironically enough) a Dell laptop computer. At the time of his October deposition, Elles claimed that the vehicle broken into belonged to Caesar Chan, one of Elles's business partners from British Columbia who had driven Elles to the courthouse. However, the police report (based on information provided by Elles) identified the vehicle as a white Ford F-150 van with license plate number BAN8103, the very same van that Elles had been driving for months and which he earlier claimed was his brother-in-law's.

Against this backdrop, the Court must conclude that the van actually belongs to Elles and is therefore seizable under Michigan Compiled Law § 600.6017. Elles claimed in the July 2007 deposition that the van was his brother-in-law's and then, at another moment, that it belonged to a business partner from British Columbia. However, photographs taken in June 2007 show Elles using the van, emblazoned with Dell and Advicon logos, and he drove the vehicle with regularity. Elles offered an unconvincing explanation for why his brother-in-law's van would have Dell and Advicon signs on it. Elles has tried to confuse the facts further by asserting that the van which was broken into at the courthouse was a different van, owned by a different person. However, the police report filed by Elles reveals that the victimized van is the same vehicle that was supposedly owned by Elles's brother-in-law. Although the license plate number has been changed – from CB81949 to BAN8103 – it is clear that the vehicle is identical. The only conclusion that can be reached is that Elles lied about the true ownership and identity of the van, and changed the license plate, to cloud

the fact of his ownership. Because the Court finds that the van is the personal property of Elles, the Court will direct the Marshal to seize the vehicle and sell it in accordance with Michigan Court Rule 3.106 if Elles fails to post a bond.

Finally, the plaintiff has also requested authorization to take control of the toll-free phone number used by the Advicon store. The plaintiff observes that (888) 888-2171 is the number that was used by Advicon Computer Services, Inc. (at the original Advicon store) and that is currently being used by Advicon Computer Store, Inc. (at the new Advicon store). Elles admitted as much at his deposition and further undermined his claim that he was not involved in opening the new Advicon store:

> Q. What phone number did Advicon [Computer] Services, Inc. use?
> . . .
> Q. How about the toll free 888 number?
> A. Is that on there?
> Q. I'll show you exhibit 7, which is your Advicon business card.
> A. Oh. Well, there you go, then.
> Q. And that phone number is 888-888-2171, right?
> A. Uh-huh.
> . . .
> Q. And also the 35364 Gratiot address?
> A. Yep. That's correct too.
> Q. Does Advicon Computer Store use that same phone number?
> A. Yes.
> Q. And how is it that it got control of that number?
> A. Because I own that phone number.
> Q. Oh, you own the phone number.
> A. Yep.
> Q. You, personally?
> A. Uh-huh.
> . . .
> Q. Oh. Okay. And after you opened up as Advicon Computer Store you continued to use the same phone number?
> A. Heck yeah.

Elles Dep. at 189-91.

Although this testimony shows that the telephone number is controlled by Mr. Elles, the Court must reject the plaintiff's request to make it its own. It is not clear to the Court that a telephone number qualifies as "personal property" within the meaning of Michigan Compiled Law § 600.6017, and, indeed, the Court doubts this is the case. The plaintiff has not cited any authority suggesting that a phone number amounts to property, and the Court's own research on the matter has been equally fruitless. Moreover, the plaintiff does not appear to desire the phone number as a way to enforce its judgment; nothing in the default judgment directed Elles to stop using the phone number (making Rule 70 unavailable), and seizure of the phone number would not facilitate its money judgment (rendering inapposite Rule 69). Finally, allowing the plaintiff to take over the number would be to grant relief that is overbroad – although the number may be used for some illegitimate dealings (invoking the name of Dell, for instance), it has not been shown that it is exclusively used for this purpose (as a Dell service hotline, for example). Accordingly, the Court will deny this portion of the plaintiff's motion.

That leaves only the allegations and evidence furnished by the parties in supplemental briefs filed after the January 15, 2008 hearing, which do nothing to alter the Court's conclusions. The evidence can be divided into two categories: the first relating to the continued use of the Advicon van, and the second relating to the plaintiff's allegation that the Advicon store continues to display Dell marks. With respect to the van, the plaintiff submitted a photograph of the vehicle allegedly taken on March 13, 2008. That photo shows the van parked outside the Advicon store still bearing the Dell logo. Elles questions both the accuracy and relevance of this photo. He observes that the photo bears no date, and he renews his argument that the van is not his. The Court need not decide whether the photograph evidences continued use of the van by Elles; it is enough to say that this

evidence, and the arguments offered by Elles in response, do not alter the Court's conclusion about the ownership of the van and Elles's use of it in the past.

The same goes for the new evidence regarding a Dell sign. In the plaintiff's supplemental brief, it submitted a photograph allegedly taken on March 13, 2008 showing a sign on the Advicon shop advertising "Dell Dimension PC's Sales & Service." Pl.'s Supp. Br. [dkt # 142] at 3. Although the words "Dell Dimension" are visible, it is clear that someone painted over them but did a poor job of it. Elles counters with photographs of his own, dated January 16, 2008, that depict various (but different) signs. They contain no Dell marks. Based on this evidence, Elles contends that "Counsel Wassom MUST have diluted the paint on the sign and then took a close-up picture of the sign." Def.'s Supp. Br. at 3. The Court can think of at least one more plausible explanation. If Elles did paint over the offending words, it seems much more likely that the paint was diluted not by Mr. Wassom's efforts but by Mother Nature's. There is nothing to suggest that Mr. Wassom tampered with evidence in this case, and Elles's request for sanctions on that ground must be denied. In any event, however, it is not necessary to determine exactly what happened to the sign at issue. The Court's analysis is not changed by the information in the recent filings.

V.

The Court finds that defendant Daniel David Elles is entitled to a stay of the judgment provided that he posts an adequate supersedeas bond. Although Elles has conducted a campaign of deception, the Federal Rules of Civil Procedure mandate this relief. On the other hand, there is no merit to Elles's motion for sanctions. If Elles fails to post an adequate bond, the Court will permit the plaintiff to enforce the judgment in the manner described above.

Accordingly, it is **ORDERED** that defendant Elles's motion for a stay [dkt # 138] is **CONDITIONALLY GRANTED**. The judgment is **STAYED** through **June 6, 2008**. If Mr. Elles posts a supersedeas bond pursuant to Rule 62(d) in the amount of $152,082.32, the stay shall continue in effect pending the resolution of Elles's appeal by the United States Court of Appeals for the Sixth Circuit. If Elles fails to post such a bond, the stay will automatically dissolve on **June 7, 2008 at 12:01 a.m.**

It is further **ORDERED** that defendant Elles's motion for sanctions [dkt # 135] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion to seize and destroy certain property [dkt # 127] is **CONDITIONALLY DENIED**. If Elles fails to post a supersedeas bond as ordered on or before **June 6, 2008**, the plaintiff may pursue its collection as ordered. It shall be the plaintiff's responsibility to inform the Court if this is the case. In that event, the Court will issue a separate order describing the relief authorized for the reasons stated in this opinion.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: May 22, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 22, 2008.

s/Felicia M. Moses
FELICIA M. MOSES

---